**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LA'TASHA WEEKLY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **OVERLAND PARK SURGICAL** | ) | |
| **SPECIALTIES, LLC,** | ) | |
| *Registered Agent:* | ) | |
| CT CORPORATION SYSTEM | ) | |
| 112 SW 7th St., Ste. 3C | ) | |
| TOPEKA, KS 66603 | ) | Case No. _____ |
| | ) | |
| **HCA MANAGEMENT SERVICES LP,** | ) | |
| *Registered Agent:* | ) | **REQUEST FOR JURY TRIAL** |
| CT CORPORATION SYSTEM | ) | |
| 112 SW 7th St., Ste. 3C | ) | |
| TOPEKA, KS 66603 | | |

**HCA PHYSICIAN SERVICES LP,**
*Registered Agent:*
CT CORPORATION SYSTEM
112 SW 7th St., Ste. 3C
TOPEKA, KS 66603
        and

**HCA MIDWEST COMPREHENSIVE
CARE, INC.,**
*Registered Agent:*
CT CORPORATION SYSTEM
112 SW 7th St., Ste. 3C
TOPEKA, KS 66603

        Defendants.

## <u>COMPLAINT FOR DAMAGES</u>

COMES NOW Plaintiff La'Tasha Weekly by and through her attorneys, and for her cause

of action against Defendants Overland Park Surgical Specialties, LLC, HCA Management Services

LP, HCA Physician Services LP, and HCA Midwest Comprehensive Care, Inc., states and alleges as follows:

## Parties and Jurisdiction

1.      This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act as Amended, 42 U.S.C. §§ 12101 *et seq.* ("ADAAA"); and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

2.      Plaintiff La'Tasha Weekly ("Plaintiff") is a female citizen of the United States, domiciled in Overland Park, Johnson County, Kansas.

3.      Plaintiff is Black.

4.      Defendant Overland Park Surgical Specialties, LLC, (hereinafter "OPSS") is and was at all relevant times a limited liability company organized pursuant to the laws of the state of Delaware.

5.      Upon information and belief, Plaintiff alleges that at least one member of OPSS is domiciled in Kansas.

6.      In each of 20 or more calendar weeks in the current or preceding calendar year, OPSS employed fifteen (15) or more employees.

7.      In each of 20 or more calendar weeks in the current or preceding calendar year, OPSS employed more than five hundred (500) employees.

8.      In each of 20 or more calendar weeks in the current or preceding calendar year, OPSS employed fifty (50) or more employees within a seventy-five (75) mile radius of the facility at which Plaintiff worked.

9.      At all relevant times, OPSS was engaged in interstate commerce.

10. OPSS is an employer within the meaning of Title VII.

11. OPSS is an employer within the meaning of the ADAAA.

12. OPSS is an employer within the meaning of the FMLA.

13. Defendant HCA Management Services LP, (hereinafter "HCA Management") is and was at all relevant times a limited partnership organized pursuant to the laws of the state of Delaware.

14. Upon information and belief, Plaintiff alleges that at least one member of HCA Management is domiciled in Kansas.

15. In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Management employed fifteen (15) or more employees.

16. In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Management employed more than five hundred (500) employees.

17. In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Management employed fifty (50) or more employees within a seventy-five (75) mile radius of the facility at which Plaintiff worked.

18. At all relevant times, HCA Management was engaged in interstate commerce.

19. HCA Management is an employer within the meaning of Title VII.

20. HCA Management is an employer within the meaning of the ADAAA.

21. HCA Management is an employer within the meaning of the FMLA.

22. Defendant HCA Physician Services LP, (hereinafter "HCA Physicians") is and was at all relevant times a limited partnership organized pursuant to the laws of the state of Delaware.

23. Upon information and belief, Plaintiff alleges that at least one member of HCA Physicians is domiciled in Kansas.

24.     In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Physicians employed fifteen (15) or more employees.

25.     In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Physicians employed more than five hundred (500) employees.

26.     In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Physicians employed fifty (50) or more employees within a seventy-five (75) mile radius of the facility at which Plaintiff worked.

27.     At all relevant times, HCA Physicians was engaged in interstate commerce.

28.     HCA Physicians is an employer within the meaning of Title VII.

29.     HCA Physicians is an employer within the meaning of the ADAAA.

30.     HCA Physicians is an employer within the meaning of the FMLA.

31.     Defendant HCA Midwest Comprehensive Care, Inc., (hereinafter "HCA Midwest") is and was at all relevant times a corporation incorporated pursuant to the laws of the state of Delaware.

32.     HCA Midwest's principal place of business is located in Overland Park, Johnson County, Kansas.

33.     In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Midwest employed fifteen (15) or more employees.

34.     In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Midwest employed more than five hundred (500) employees.

35.     In each of 20 or more calendar weeks in the current or preceding calendar year, HCA Midwest employed fifty (50) or more employees within a seventy-five (75) mile radius of the facility at which Plaintiff worked.

36.    At all relevant times, HCA Midwest was engaged in interstate commerce.

37.    HCA Midwest is an employer within the meaning of Title VII.

38.    HCA Midwest is an employer within the meaning of the ADAAA.

39.    HCA Midwest is an employer within the meaning of the FMLA.

40.    At all times relevant, Defendants OPSS, HCA Management, HCA Physicians, and HCA Midwest (hereinafter collectively "Defendants") operated as a single enterprise with substantial interrelation of operations, control over personnel practices, and/or centralized control of labor operations.

41.    At all times relevant, Defendants operated a series of medical offices under the name College Park Family Care, including a location on Mur-Len Rd. in Olathe, Johnson County, Kansas.

42.    Upon information and belief, Plaintiff alleges that Defendants each had the power to hire and fire Plaintiff and other College Park Family Care employees; supervised and controlled the work schedules and conditions of employment for Plaintiff and other College Park Family Care employees; determined the rate and method of payment for Plaintiff and other College Park Family Care employees; and maintained employment records for Plaintiff and other College Park Family Care employees.

43.    Plaintiff's performance reviews were recorded on documents prepared by HCA Physicians.

44.    Defendants qualify as joint employers of Plaintiff and/or a common enterprise during the time of Plaintiff's employment.

45.    This Court has personal jurisdiction over the parties because Defendants substantial and continuous business within the District of Kansas, specifically within Johnson County, Kansas.

46.     Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

47.     Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged discriminatory conduct occurred in this District.

## Administrative Procedure

48.     On or about December 6, 2022, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against "Murlen Office - College Park Family Care" alleging discrimination based on race and disability as well as retaliation.

49.     On or about April 21, 2023, HCA Management sent correspondence to the EEOC regarding Plaintiff's Charge of Discrimination

50.     In its communication to the EEOC regarding Plaintiff's Charge of Discrimination, HCA Management indicated that "College Park Family Care ha[d] asked [HCA Management] to assist in responding to" Plaintiff's Charge of Discrimination and that "no other office is authorized to deal with [the EEOC] on [the] matter."

51.     Defendants had notice of Plaintiff's Charge of Discrimination against "Murlen Office - College Park Family Care" while said Charge of Discrimination was pending with the EEOC.

52.     Defendants had the opportunity to participate in conciliation proceedings with the EEOC with regard to Plaintiff's Charge of Discrimination.

53.     On or about August 11, 2023, the EEOC issued Plaintiff a Notice of a Right to Sue

54.     This lawsuit was filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

55.     The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be as broad as the scope of an EEOC investigation which could reasonably be expected to have grown out of the Charge of Discrimination.

56.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

57.     This action is filed within the applicable statute of limitations.

**Additional Factual Allegations**

58.     Plaintiff began working for Defendants in one of their College Park Family Care facilities on or about September 12, 2012, as a Medical Office Specialist ("MOS").

59.     Plaintiff is Black.

60.     In approximately December 2015, the practice manager ("PM") for Defendants' College Park Family Care facility at which Plaintiff worked at that time ("H.H.") told Plaintiff that Plaintiff would be promoted to medical office coordinator ("MOC").

61.     On or about January 2016, Defendants transferred Plaintiff to the "Mur Len" location of their College Park Family Care facilities ("the Mur-Len office").

62.     H.H. was also the PM at the Mur-Len office, so when Plaintiff transferred, H.H. continued to be her supervisor.

63.     Although Plaintiff was given the title of MOC, when Plaintiff was transferred to the Mur-Len office, there were job duties typically assigned to MOCs that she was not permitted to perform.

64.     In 2020, Plaintiff was made aware of a program for MOCs to enhance their capabilities in the workplace and prepare them to become PMs.

65.    Over the course of 2020, Plaintiff repeatedly indicated to H.H. that she wanted to enroll in the program for MOCs.

66.    In response to Plaintiff's repeated indications that she wanted to enroll in the program for MOCs, H.H. responded that Plaintiff should look out for more information about the program and that H.H. would enroll Plaintiff in the program.

67.    Plaintiff was never given additional information about, or enrolled in, the program.

68.    Instead, H.H. told Plaintiff that, because of short-staffing, Defendants needed Plaintiff to work at the front desk of the Mur-Len office, and that would prevent Plaintiff from participating in the program.

69.    H.H. also told Plaintiff that the MOC training program had been suspended because of the global COVID-19 pandemic.

70.    On or about June 30, 2020, Plaintiff received a performance review from H.H.

71.    The performance review Plaintiff received from H.H. on or about June 30, 2020, acknowledged Plaintiff had suffered through prolonged periods of being short-staffed which impacted her ability to fully perform—or even fully train on—her job as an MOC.

72.    In approximately May 2021, H.H. announced that she would be resigning from her position as PM for the Mur-Len office.

73.    At that time, Plaintiff applied to take over as PM for the Mur-Len office upon H.H.'s resignation.

74.    Plaintiff also applied for PM positions at two other of Defendant's College Park Family Care facilities at that time.

75.    Defendants did not hire Plaintiff for any of the PM positions for which she applied in approximately May 2021.

76.     In approximately August 2021, Defendants hired a new PM for the Mur-Len office ("K.W.").

77.     K.W. is white.

78.     On information and belief, the individuals hired as PMs at Defendants' other College Park Family Care facilities instead of Plaintiff are white.

79.     At approximately that same time, Plaintiff requested and was granted FMLA leave.

80.     Plaintiff took the FMLA time because she suffers from chronic migraines.

81.     K.W.'s prior experience working for Defendants was as a nurse and clinic manager but did not include working in the front office of any of Defendants' College Park Family Care facilities.

82.     During K.W.'s tenure as PM, Plaintiff needed to show her how to do several of her job duties.

83.     At some point while K.W. was PM, Plaintiff expressed her frustration to K.W. that Defendants had not considered Plaintiff for any PM positions and attributed this disregard to Plaintiff's race.

84.     In approximately mid-January 2022, K.W. announced that she would be resigning from her position as PM for the Mur-Len office.

85.     Upon K.W.'s departure, Defendants placed the PM of another College Park Family Care facility ("M.B.") at the Mur-Len office as interim PM.

86.     At approximately the same time, Plaintiff again requested and was granted FMLA leave.

87.     Plaintiff's FMLA leave kept Plaintiff away from work from approximately mid-January 2022 until approximately mid-March 2022.

88.    Plaintiff's FMLA leave from approximately mid-January 2022 until approximately mid-March 2022 was first for a number of her own health issues, including but not limited to her chronic migraines, then to care for her son, who suffered from a burst appendix.

89.    Plaintiff's first opportunity to work closely with M.B. happened upon Plaintiff's return to work in approximately mid-March 2022.

90.    Upon her return to work in approximately mid-March 2022, Plaintiff was required to immediately train two new employees at the Murl-Len office.

91.    Shortly after Plaintiff's return to work in approximately mid-March 2022, M.B. acknowledged the high quality of Plaintiff's work at the Mur-Len office.

92.    M.B. also told Plaintiff that she needed Defendants to hire a full-time PM for the Mur-Len office because M.B. was finding it extremely difficult to cover both the Mur-Len office and the College Park Family Care facility to which she was originally assigned.

93.    Plaintiff asked M.B. whether the MOC training program had restarted since the COVID-19 pandemic had abated significantly.

94.    M.B. told Plaintiff that the program had never been suspended and that she would get Plaintiff enrolled immediately.

95.    However, because the Mur-Len office was still substantially short-staffed and Plaintiff was also having to train two employees in addition to completing her regular job duties, it was virtually impossible for Plaintiff to complete most of the MOC training program.

96.    Defendants posted the opening for the PM position at the Mur-Len office in approximately April 2022.

97.    Plaintiff again applied for the Mur-Len office PM position.

98.     Plaintiff interviewed for the Mur-Len office PM position on or around April 27, 2022.

99.     During her interview, Plaintiff was asked whether she would resign her employment with Defendants if Defendants hired someone else for the PM position.

100.    Plaintiff indicated that she would not leave Defendants if they hired someone else for the Mur-Len office PM position.

101.    On or about May 5, 2022, Plaintiff had another interview for the Mur-Len office PM position with M.B. and a PM for another of Defendants' College Park Family Care facilities ("J.G.").

102.    During her May 5 interview, Plaintiff was again asked whether she would leave Defendants for another position if Defendants hired another candidate for the Mur-Len office PM position.

103.    In response, Plaintiff again told her interviewers that she intended to remain employed with Defendants whether she was hired for the PM position at the Mur-Len office or not.

104.    During her May 5 interview, Plaintiff asked when Defendants would make the decision of who to hire for the Mur-Len office PM position.

105.    Plaintiff's interviewers told her there were still applicants to interview, but that Defendants hoped to have the decision made within the following week.

106.    Approximately three (3) weeks after Plaintiff's May 5 interview, M.B. called Plaintiff into a meeting in the breakroom and told Plaintiff that Defendants had decided to make another MOC from another facility ("K.C.") the new PM at the Mur-Len office.

107.    K.C. is white.

108.    However, K.C. was also to immediately go on maternity leave until late-August 2022, leaving the Mur-Len office without a PM.

109.    M.B. also told Plaintiff that M.B. was looking to make a change, that her PM position at the other facility would be opening up as a result, and that Plaintiff could apply for that position.

110.    In approximately mid-August 2022, M.B. announced that she was leaving her position of PM at the other College Park Family Care facility.

111.    M.B. also stated that K.C. had decided to take over as PM at that facility instead of starting as the PM at the Mur-Len office.

112.    M.B. stated that Defendants were reopening the application process for the PM position at the Mur-Len office.

113.    Defendants were aware Plaintiff was interested in the PM position at the Mur-Len office.

114.    Defendants did not approach Plaintiff about reapplying for the PM position at the Mur-Len office for which the application process was reopened in approximately mid-August 2022.

115.    It would have been futile for Plaintiff to apply for the PM position at the Mur-Len office in approximately mid-August 2022.

116.    In approximately early September 2022, Plaintiff discussed Defendants' pending job openings with a part-time MOS.

117.    The part-time MOS is white.

118.    The part-time MOS started her employment with Defendants in approximately February 2022.

119.    One of those open positions was a "work-from-home" position, which is what the part-time MOS was looking for.

120.    The part-time MOS told Plaintiff that the position did not pay enough.

121.    Despite having only been employed with Defendants for approximately six (6) months—nine-and-a-half (9.5) years less than Plaintiff, being in a subordinate position to Plaintiff, and only working part-time, the part-time MOS was only making $0.02 per hour less than Plaintiff.

122.    On or about September 8, 2022, Plaintiff gave M.B. a resignation letter.

123.    Upon receiving Plaintiff's resignation letter, M.B. indicated she anticipated Plaintiff's resignation and made no effort to convince Plaintiff to stay.

124.    On Plaintiff's last day working for Defendants, a coworker at the Mur-Len office expressed concern that there would not be anyone in the office to perform a particular task the next day, in part because of Plaintiff's departure.

125.    In response to the coworker's concern, M.B. stated that an MOC from another of Defendant's College Park Family Care facilities would be coming over, and that she would be able to handle it.

126.    M.B. also said that MOC would likely be the new PM at the Mur-Len office.

127.    M.B. pointed out one of the benefits of hiring that PM was that she would "always be here."

128.    M.B.'s comment about the other MOC "always be[ing] here" was a pointed reference to Plaintiff's use of FMLA leave.

129.    The MOC to whom M.B. was referring that would likely become the new PM at the Mur-Len office is white.

130.    Defendants were paying at least one white MOC with less experience than Plaintiff approximately $2.00 per hour more than they were paying Plaintiff.

**COUNT I**
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Race Discrimination – Failure to Promote**
**(against all Defendants)**

131.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

132.    Plaintiff is Black and therefore a member of a protected class based on her race.

133.    Defendants did not promote Plaintiff to the position of practice manager in April 2022 or August 2022.

134.    Plaintiff was qualified for the position of practice manager in April 2022 and August 2022.

135.    Plaintiff's race was a motivating or determining factor in Defendants' refusal to promote her to the position of practice manager.

136.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

137.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

138.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under Title VII.

139.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her race, in violation of Title VII.

140.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

141.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

142.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

143.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

144.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Race Discrimination – Disparate Treatment
### (against all Defendants)

145.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

146.    Plaintiff is Black and therefore a member of a protected class based on her race.

147.    Defendants paid white peers with less experience more than they paid Plaintiff.

148.    Defendants paid white employees subordinate to Plaintiff with less experience nearly the same amount as they paid Plaintiff.

149.    Plaintiff's race was a motivating or determining factor in Defendants' decision to pay white employees more than her.

150.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

151.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

152.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under Title VII.

153.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her race, in violation of Title VII.

154.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

155.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

156.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

157.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

158.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Race Discrimination – Constructive Discharge**
**(against all Defendants)**

159.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

160.    Plaintiff is Black and therefore a member of a protected class based on her race.

161.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

162.    Plaintiff's race was a motivating or determining factor in the intolerable treatment to which Plaintiff was subjected.

163.    Defendants' conduct was directed toward forcing Plaintiff to quit.

164.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

165.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

166.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

167.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

168.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

169. Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under Title VII.

170. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her race, in violation of Title VII.

171. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

172. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

173. By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

174. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

175. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including

but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Violation under 42 U.S.C. § 2000e *et. seq.*
### Retaliation – Constructive Discharge
### (against all Defendants)

176.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

177.    Plaintiff engaged in protected activity by telling her supervisor that she believed Defendants were refusing to promote her to the practice manager position.

178.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

179.    Plaintiff's good faith report of race discrimination was a determining factor for the intolerable treatment to which Plaintiff was subjected.

180.    Defendants' conduct was directed toward forcing Plaintiff to quit.

181.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

182.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

183.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

184.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified

by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

185.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against their employees, including retaliation for reporting race discrimination.

186.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under Title VII.

187.    As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Defendants, based on her report of race discrimination, in violation of Title VII.

188.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

189.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

190.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

191.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

192.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Violation under 42 U.S.C. § 1981
### Race Discrimination – Failure to Promote
### (against all Defendants)

193.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

194.    Plaintiff is Black and therefore a member of a protected class based on her race.

195.    Defendants did not promote Plaintiff to the position of practice manager in April 2022 or August 2022.

196.    Plaintiff was qualified for the position of practice manager in April 2022 and August 2022.

197.    Plaintiff's race was a but-for cause of Defendants' refusal to promote her to the position of practice manager.

198.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified

by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

199.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

200.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under 42 U.S.C. § 1981.

201.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her race, in violation of 42 U.S.C. § 1981.

202.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

203.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

204.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

205.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

206.    Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT VI
### Violation under 42 U.S.C. § 1981
### Race Discrimination – Disparate Treatment
### (against all Defendants)

207.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

208.    Plaintiff is Black and therefore a member of a protected class based on her race.

209.    Defendants paid white peers with less experience more than they paid Plaintiff.

210.    Defendants paid white employees subordinate to Plaintiff with less experience nearly the same amount as they paid Plaintiff.

211.    Plaintiff's race was a but-for cause of Defendants' decision to pay white employees more than her.

212.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

213.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

214.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under 42 U.S.C. § 1981.

215.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her race, in violation of 42 U.S.C. § 1981.

216.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

217.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

218.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

219.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

220.    Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for

compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VII**
**Violation under 42 U.S.C. § 1981**
**Race Discrimination – Constructive Discharge**
**(against all Defendants)**

221.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

222.    Plaintiff is Black and therefore a member of a protected class based on her race.

223.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

224.    Plaintiff's race was a but-for cause of the intolerable treatment to which Plaintiff was subjected.

225.    Defendants' conduct was directed toward forcing Plaintiff to quit.

226.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

227.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

228.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

229.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and

course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

230.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including race discrimination.

231.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under 42 U.S.C. § 1981.

232.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her race, in violation of 42 U.S.C. § 1981.

233.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

234.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

235.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

236.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

237.    Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT VIII
### Violation under 42 U.S.C. § 1981
### Retaliation – Constructive Discharge
### (against all Defendants)

238.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

239.    Plaintiff engaged in protected activity by telling her supervisor that she believed Defendants were refusing to promote her to the practice manager position.

240.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

241.    Plaintiff's good faith report of race discrimination was a but-for cause of the intolerable treatment to which Plaintiff was subjected.

242.    Defendants' conduct was directed toward forcing Plaintiff to quit.

243.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

244.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

245.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

246.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

247.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against their employees, including retaliation for reporting race discrimination.

248.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under 42 U.S.C. § 1981.

249.    As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Defendants, based on her race, in violation of 42 U.S.C. § 1981.

250.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

251.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

252.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

253.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

254.    Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT IX
**Violation under 42 U.S.C. §§ 12101 *et seq.***
**Disability Discrimination – Failure to Accommodate**
**(against all Defendants)**

255.    Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all the above numbered paragraphs.

256.    At all times relevant, Plaintiff suffered from physical impairments, specifically chronic migraines, was regarded by Defendants as having such impairments, and/or had a record of such impairments.

257.    At all times relevant, Plaintiff's chronic migraines substantially limited one or more major life activities as described in the ADAAA, including but not limited to seeing, sleeping, standing, learning, reading, concentrating, thinking, communicating, and working.

258.    At all relevant times, Plaintiff could perform the essential functions of the job with or without reasonable accommodation.

259.    Specifically, Plaintiff could have performed the essential functions of her job with an accommodation of occasional, limited leave from work to recover from her symptoms.

260.    At all times relevant, Plaintiff was a qualified individual with a disability as defined by the ADAAA.

261.    Plaintiff specifically requested occasional, limited leave from work to recover from her symptoms.

262.    By requesting time off work, Plaintiff requested a reasonable accommodation for her disability as described above.

263.    Allowing Plaintiff occasional, limited leave from work to recover from her symptoms did not pose an undue hardship on Defendants.

264.    Defendants failed to provide a reasonable accommodation to Plaintiff.

265.    Defendants refused to engage in the interactive process with Plaintiff to determine reasonable accommodation for her disability as described above.

266.    Specifically, Defendant refused to excuse her absences caused by her disability and instead subjected her to discipline for such absences.

267.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified

by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

268.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including the failure to provide reasonable accommodations for disabilities.

269.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under the ADAAA.

270.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her disability, in violation of the ADAAA.

271.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

272.    By failing to take prompt and effective remedial action, and by failing to promote Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

273.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

274.    Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT X
**Violation under 42 U.S.C. §§ 12101 *et seq.***
**Disability Discrimination – Failure to Promote**
**(against all Defendants)**

275.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

276.    At all times relevant, Plaintiff suffered from physical impairments, specifically chronic migraines, was regarded by Defendants as having such impairments, and/or had a record of such impairments.

277.    At all times relevant, Plaintiff's chronic migraines substantially limited one or more major life activities as described in the ADAAA, including but not limited to seeing, sleeping, standing, learning, reading, concentrating, thinking, communicating, and working.

278.    At all relevant times, Plaintiff could perform the essential functions of the job with or without reasonable accommodation.

279.    Specifically, Plaintiff could have performed the essential functions of her job with an accommodation of occasional, limited leave from work to recover from her symptoms.

280.    At all times relevant, Plaintiff was a qualified individual with a disability as defined by the ADAAA.

281.    Defendants did not promote Plaintiff to the position of practice manager in April 2022 or August 2022.

282.    Plaintiff was qualified for the position of practice manager in April 2022 and August 2022.

283.    Plaintiff's disability was a motivating or determining factor in Defendants' refusal to promote her to the position of practice manager.

284.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

285.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including disability discrimination.

286.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under the ADAAA.

287.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her disability, in violation of the ADAAA.

288.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

289.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

290.    By failing to take prompt and effective remedial action, and instead of promoting Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

291.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

292.    Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT XI**
**Violation under 42 U.S.C. §§ 12101** *et seq.*
**Disability Discrimination – Constructive Discharge**
**(against all Defendants)**

293.    Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all the above numbered paragraphs.

294.    At all times relevant, Plaintiff suffered from physical impairments, specifically chronic migraines, was regarded by Defendants as having such impairments, and/or had a record of such impairments.

295.    At all times relevant, Plaintiff's chronic migraines substantially limited one or more major life activities as described in the ADAAA, including but not limited to seeing, sleeping, standing, learning, reading, concentrating, thinking, communicating, and working.

296.    At all relevant times, Plaintiff could perform the essential functions of the job with or without reasonable accommodation.

297.    Specifically, Plaintiff could have performed the essential functions of her job with an accommodation of occasional, limited leave from work to recover from her symptoms.

298.    At all times relevant, Plaintiff was a qualified individual with a disability as defined by the ADAAA.

299.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

300.    Plaintiff's disability was a motivating or determining factor in the intolerable treatment to which Plaintiff was subjected.

301.    Defendants' conduct was directed toward forcing Plaintiff to quit.

302.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

303.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

304.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

305.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified

by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

306.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including the failure to provide reasonable accommodations for disabilities.

307.    Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under the ADAAA.

308.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her disability, in violation of the ADAAA.

309.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

310.    As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

311.    By failing to take prompt and effective remedial action, and by failing to promote Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

312.    As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

313.    Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT XII
### Violation under 42 U.S.C. §§ 12101 *et seq.*
### Retaliation – Constructive Discharge
### (against all Defendants)

314.    Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all the above numbered paragraphs.

315.    At all times relevant, Plaintiff suffered from physical impairments, specifically chronic migraines, was regarded by Defendants as having such impairments, and/or had a record of such impairments.

316.    At all times relevant, Plaintiff's chronic migraines substantially limited one or more major life activities as described in the ADAAA, including but not limited to seeing, sleeping, standing, learning, reading, concentrating, thinking, communicating, and working.

317.    At all relevant times, Plaintiff could perform the essential functions of the job with or without reasonable accommodation.

318.    Specifically, Plaintiff could have performed the essential functions of her job with an accommodation of occasional, limited leave from work to recover from her symptoms.

319.    At all times relevant, Plaintiff was a qualified individual with a disability as defined by the ADAAA.

320.    Plaintiff specifically requested occasional, limited leave from work to recover from her symptoms.

321.    By requesting time off work, Plaintiff requested a reasonable accommodation for her disability as described above.

322.    Allowing Plaintiff occasional, limited leave from work to recover from her symptoms did not pose an undue hardship on Defendants.

323.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

324.    Plaintiff's request for occasional, limited leave from work to recover from her symptoms was a determining factor in the intolerable treatment to which Plaintiff was subjected.

325.    Defendants' conduct was directed toward forcing Plaintiff to quit.

326.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

327.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

328.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

329.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified

by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

330.   Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including the failure to provide reasonable accommodations for disabilities.

331.   Defendants failed to train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under the ADAAA.

332.   As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Defendants, based on her request for reasonable accommodation, in violation of the ADAAA.

333.   As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

334.   As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

335.   By failing to take prompt and effective remedial action, and by failing to promote Plaintiff, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

336.   As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to, or conscious disregard for, the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and other companies from like conduct in the future.

337.    Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress damages; for equitable relief, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT XIII**
**Violation under 29 U.S.C. § 2615(a)(2)**
**Retaliation**
**(against all Defendants)**

338.    Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

339.    At all relevant times, Plaintiff had a serious health condition, to wit chronic migraines.

340.    At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

341.    Plaintiff requested leave pursuant to the FMLA.

342.    Plaintiff engaged in a protected activity when she requested leave pursuant to the FMLA.

343.    Defendants subjected Plaintiff to treatment that made Plaintiff's work intolerable.

344.    A causal connection exists between Plaintiff's exercise of her FMLA rights and the aforementioned intolerable treatment to which Plaintiff was subjected.

345.    Defendants' conduct was directed toward forcing Plaintiff to quit.

346.    Defendants failed to take prompt and remedial action to correct the intolerable treatment to which Plaintiff was subjected.

347.    Plaintiff's decision to terminate her employment was a reasonably foreseeable consequence of Defendants' conduct.

348.    The conduct to which Defendants subjected Plaintiff was such that a reasonable person in her situation would find it intolerable and find that resignation was the only reasonable alternative.

349.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants; were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

350.    Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal retaliation against their employees.

351.    Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the applicable civil rights laws, including under the FMLA.

352.    As shown by the foregoing, Defendants engaged in a willful violation of the FMLA, and their actions were not in good faith.

353.    As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

354.    Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to recover liquidated damages from Defendants.

355.    Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### **Demand for Jury Trial**

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By:  /s/ Joshua P. Wunderlich
Joshua P. Wunderlich  D. Kan. #78506
j.wunderlich@cornerstonefirm.com
5821 NW 72nd St.
Kansas City, Missouri 64151
Telephone            (816) 581-4040
Facsimile            (816) 741-8889

ATTORNEY FOR PLAINTIFF